**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| EXPRESS BLOWER, INC. ET AL | CIVIL ACTION NO. 06-2380 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| EARTHCARE LLC, ET AL | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM ORDER**

Before the Court are Plaintiffs' Motion for Summary Judgment (Record Document 16) and Defendants' Cross Motion for Summary Judgment (Record Document 29) Based on the following, the Plaintiffs' Motion for Summary Judgment is **DENIED** without prejudice to refile, the Defendants's Cross Motion for Summary Judgment is likewise **DENIED** without prejudice.

**I. JURISDICTION**

The Court's jurisdiction over this matter is founded in diversity. See Compl., Record Document 1, ¶ 5; Answer, Record Document 2, ¶ 5. Plaintiffs are corporations incorporated under the laws of the State of Ohio with their principal place of business in Fairfield, Ohio. Amended Complaint, Record Document 14 ¶ 2. Defendant Earthcare, L.L.C. is authorized to do and doing business in the State of Louisiana, and has a principal place of business in Downsville, Louisiana. Answer, Record Document 2, ¶ 2. Defendants Reggie Skains and Ralph Kelley are domiciled in Downsville, Louisiana. Id. ¶¶ 3 & 4

**II. UNDISPUTED FACTS**

The following facts are undisputed. See Pls.' Stmt. of Uncontested Material Facts, Record Document 16-10; Defs.' Stmts. of Uncontested Material Facts, Record Documents 18-4 and 29-4; Defs.' Resp. To Stmt. of Pls.' Uncontested Material Facts, Record

Document 18-5.

Plaintiff Express Blower, Inc. ("Express Blower") manufactures and distributes pneumatic blowing equipment. The remaining Plaintiffs in this case, Finn Corporation ("Finn") and DHG, Inc. ("DHG"), are parent companies of Express Blower. IFC Credit Corporation ("IFC") entered into a Vendor Program Agreement with Express Blower, Finn, and DHG.

Express Blower sold an EB 60 Express Blower High Volume ("the equipment") to IFC for $320,419.80. On or about September 30, 2002, Defendant Earthcare LLC ("Earthcare") leased the equipment from IFC. IFC and Earthcare executed a Master Lease Agreement (the "Lease") requiring six initial payments of $3,600 followed by 66 payments of $6,061, plus applicable taxes. Defendants Ralph Kelley ("Kelley"), personally; Reggie G. Skains, personally; and Reggie G. Skains ("Skains") as President of RGS construction Company, Inc., guaranteed the Lease.[1] On October 21, 2002, Earthcare paid a downpayment of $32,041.98 towards the sale price. The term of the Lease was 72 months, and it required Earthcare to make an advance payment of $9,661.00 plus applicable taxes, followed by six monthly payments of $3,600, and then 66 monthly payments of $6,6061.00. Earthcare made regular payments on the Lease for a time, but failed to make several payments, and made no payments after September 4, 2004. The regular payments

---

[1]The Lease, which forms the subject of this case, is numbered 300574. See Mot. Summ. J., Exh. B, Record Document 16. The guaranty agreements signed by Skains and Kelley, by contrast, refer to lease numbered 300686. Id. However, Defendants Skains and Kelley have conceded that they guaranteed the lease in question. See Def. Opp. to Pls.' Mot. Summ. J., Record Document 18-1 at 2 ("Skains and Kelley signed an agreement that purports to guarantee the obligation of the lease payment by Earthcare to IFC.").

Earthcare made totaled $83,079.92. At the time of default, Earthcare owed IFC payments totaling $108,162.92. The balance of the Lease payments scheduled, but not yet due at the time of default, equals $240,044.16.

After Earthcare defaulted by ceasing to make payments, the Plaintiffs paid IFC $108,162.92 in an effort to compensate IFC for the payments Earthcare failed to make. Pursuant to the Repurchase Agreement. In April 2005, Express Blower repossessed the equipment from Earthcare. On May 24, 2005, Express Blower purchased the equipment back from IFC for $271,547.41. The next day, Express Blower re-sold the equipment to another customer, Express Landscape, for $269,000. In connection with this resale, Express Blower incurred expenses for commission on the sale ($5,918.00), repair of the equipment ($8,816.31), rental costs for demonstration of the equipment ($6,000.00), payroll ($1,592.77) and travel costs ($2,939.67), and freight charges ($1,240.17). IFC assigned the Lease to Express Blower on June 2, 2005.

In their motion for summary judgment, Plaintiffs demand $169,368.19 from Defendants.

### III. THE PARTIES' ARGUMENTS

#### A. Plaintiffs' Position

Under the Vendor Program Agreement ("VPA") mentioned above, IFC agreed to provide financing to customers wishing to purchase blowing equipment from Express Blower. According to Plaintiffs, the VPA financing process operated as follows: After a customer's credit was approved by IFC, lease documents were executed between IFC and the customer, and the blowing equipment manufactured by Express Blower was delivered to the customer, IFC would purchase the leased equipment from Express Blower. In

signing the VPA, Plaintiffs contend they obligated themselves to pay IFC any amounts owed by a customer leasing Express-Blower-manufactured blowing equipment in the event such customer defaulted on an IFC lease. Plaintiffs also argue that a Remarketing and Repurchase Agreement ("Repurchase Agreement"), which was incorporated into the VPA, required Plaintiffs to repossess the equipment from the customer and use their best efforts to sell or re-lease the equipment in the event of default by a customer leasing Express-Blower-manufactured equipment from IFC. The Repurchase Agreement also obligated Express Blower to pay a "Close-Out" price to IFC in the event of a customer's default. The contract defines the Close-Out price as "the discounted present value (at lessor's implicit rate for the lease) of the balance of minimum guaranteed payments plus mutually agreed upon fair market value of the equipment." Repurchase Agreement, Record Document 18-3 at 1, § 3(c).

Plaintiffs reason that their contracts with IFC (the VPA and Repurchase Agreement) constitute a suretyship whereby Plaintiffs bound themselves to satisfy Earthcare's obligations to IFC. Because a surety who pays a principal obligation is subrogated by operation of law to the rights of the creditor under article 3048 of the Louisiana Civil Code, Plaintiffs contend that they are entitled to recover from Defendants. Plaintiffs also argue that they are subrogated to IFC and entitled to collect from Defendants because IFC assigned the Lease to them. See Amended Complaint, Record Document 14, ¶ 10; Complaint, Record Document 1, ¶ 21.

Plaintiffs demand $169,368.19. That figure equals the $108,162.92 Plaintiffs paid to IFC as compensation for defaulted lease payments on the Earthcare contract, plus a sum of $10,733.72, which Plaintiffs term the "net loss of the sale," plus expenses incurred

in the sale, plus interest. Plaintiffs calculate the "net loss of the sale" by subtracting the amount Express Blower received from Express Landscape in connection with the resale of the equipment leased by Earthcare ($269,000) from the amount Express Blower paid to IFC for the equipment after Earthcare defaulted on the lease ($271,547.41), and adding the cost of truck repair expenses ($8,186.31). See Record Document 18-6.

### 2. Defendants' Response

Respecting Plaintiffs' contractual surety argument, Defendants argue that Plaintiffs are not sureties because the principal purpose of the VPA and Repurchase Agreement was to guarantee a profit for IFC and for Plaintiffs, rather than to guarantee Earthcare's performance. Defendants further contend that even if Plaintiffs did act as sureties guaranteeing Earthcare's performance, Plaintiffs seek more than Defendants were obligated to pay under the lease.

In response to Plaintiffs' legal subrogation and assignment arguments generally, Defendants point out that these doctrines would only work to permit Plaintiffs to stand in IFC's shoes to enforce IFC's rights against Defendants. The right of subrogation, Defendants urge, does not permit Plaintiffs to sue Defendants for losses stemming from an agreement to which Defendants were not privy. Defendants contend that they owe no further contractual obligations to IFC, and that, as a result, subrogation and assignment do not provide Plaintiffs with an avenue for recovery from Defendants.

Further, regarding the payments Plaintiffs made to IFC after Earthcare defaulted on the Lease, Defendants point out that even the VPA did not require the Plaintiffs to make lease payments to IFC upon Earthcare's default. And although the agreement entitled IFC, in the event of default, to draw upon a Letter of Credit issued by Plaintiffs, Defendants note

that Plaintiffs make no allegations that any amounts were drawn on the Letter of Credit, present no evidence regarding the amount of the letter of credit, and do not aver that the contemplated Letter of Credit ever issued.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

## V. LAW AND ANALYSIS

Each of the six briefs submitted on the cross motions for summary judgment refers solely to Louisiana law. However, both the Lease and the Repurchase Agreement expressly provide that Illinois law governs the interpretation and application of those

agreements. The "Choice of Law" provision of the Lease states:

> This Lease, except for local filing requirements, shall be governed by Illinois law and shall be deemed to have been made in Morton Grove, Illinois. Lessee does hereby submit to the jurisdiction of any courts (Federal, State, or local) . . . within the State of Illinois with respect to any dispute, claim, or suit arising out of or relating to this Lease or Lessee's obligations hereunder. In the event this Lease or any portion thereof is assigned by Lessor, at the option of such assignee, this Lease shall be governed by the laws of the state where assignee maintains its principal place of business.

Lease, ¶ 25.

Likewise, the "Governing Law" provision of the Repurchase Agreement states: "THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF ILLINOIS." Repurchase Agreement, ¶ 12.

Each party's arguments require the Court to construe the Lease and VPA, and each of those agreements is governed by the law of Illinois law. However, neither party has submitted any citation to Illinois law. Nor have the parties cited in their briefs any authority that would permit this Court to apply Louisiana law in lieu of Illinois law. As a result, the Court is not aware of any legal basis for granting summary judgment on the motions before it.

## VI. CONCLUSION

For the reasons stated above, the Plaintiffs' Motion for Summary Judgment is **DENIED** without prejudice, and the Defendants's Cross Motion for Summary Judgment is also denied without prejudice.

If the parties wish to **refile motions for summary judgment**, they may do so **on or before February 28, 2009**. If no motion for summary judgment has been filed by that date,

the Court will refer the matter to the Magistrate Judge for entry of a revised scheduling order.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this the 26th day of January, 2009.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE