UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| EXPRESS BLOWER, INC. ET AL | CIVIL ACTION NO. 06-2380 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| EARTHCARE LLC, ET AL | MAGISTRATE JUDGE HORNSBY |

### MEMORANDUM RULING

Before the Court at this time are Plaintiff Express Blower, Inc.'s ("Express Blower") Motion for Summary Judgment [Record Document 37] and Defendant Earthcare LLC's ("Earthcare") Cross Motion for Summary Judgment [Record Document 38]. For the reasons stated herein, Plaintiffs' Motion for Summary Judgment is **DENIED** and Defendants' Cross Motion for Summary Judgment is **GRANTED.**

### FACTUAL BACKGROUND

Most of the facts in this matter are undisputed and have previously been set forth in detail in this Court's Memorandum Ruling denying the parties' initial motions for summary judgment. See Doc. 34. Subsequent to the Court's ruling, the parties refiled their motions for summary judgment and again seek summary judgment in their favor as a matter of law.

### Summary Judgment Standard

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp.

v. Catrett, 477 U.S. 317, 322 (1986).  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002).  If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 282 (5th Cir. 2001).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted.  See Alton v. Tex. A&M Univ., 168 F.3d 196, 199 (5th Cir. 1999).

## DISCUSSION

**1.      Applicable Law**

The parties dispute whether Louisiana law or Illinois law applies to this case. Plaintiffs assert that Illinois law is applicable, relying for the most part on this Court's earlier ruling which required the parties to present arguments for why Illinois law should not apply given that the Lease and the Repurchase Agreement expressly provide that Illinois law governs the interpretation of these contracts.  However, this Court did not hold that Illinois law did apply, but rather that the parties must present arguments for why it would not apply. Defendants argue that Louisiana law applies because the equipment at issue is removable property which remained in Louisiana until its repossession by Express Blower.

"Under Louisiana law, it is acceptable for contracting parties to make a choice of state law which will govern the agreement between them. That choice will be given effect, except to the extent that law contravenes the public policy of the state whose law would otherwise be applicable under La. C.C. art. 3537." THH Properties Ltd. Partnership v. Hill, 930 So.2d 1214, 1218 (La. App. 2 Cir. 2006). Choice of law clauses are specifically allowed by Louisiana Revised Statute section 9:3303 for lease agreements. However, there are exceptions. Louisiana Revised Statutes section 9:3303 (D) states "notwithstanding that the lease agreement may provide that the transaction is to be governed under the laws of another state" a lessor seeking "to enforce remedies under any lease of movable property," where the leased property is located in Louisiana, is limited to the remedy provision of Part IV of the Louisiana Revised Statutes. Those seeking to enforce remedies under a lease of movable property in Louisiana cannot enforce a choice of law clause as to those remedies. See McKoin Starter and Generator, Inc. v. Snap-On Credit, 850 So.2d 924 (La. App. 2 Cir. 2003); see also Dana Patrick Karam, Conflict of Laws - Contracts, 47 LA LR 1181, 1189 n34 (1987) (noting the intent of section 9:3303 (D) was to prevent parties from contracting around the remedies portion of the statute for lease agreements). Here, the equipment at issue was held in Louisiana by the Defendants until its ultimate repossession. Therefore, Louisiana law must apply when determining what remedies are available to the Plaintiffs.

### 2. Louisiana Default Remedies

Section 9:3318 of the Louisiana Revised Statutes provides that, in the event of lessee's default under a true lease, the lessor

> may do any one of the following[:] (a) He may file an appropriate collection action against the lessee to recover accelerated rental payments and additional amounts that are then due and outstanding and that will become due in the future over the full base term of the lease, as provided under R.S. 9:3319[;] (b) He may cancel the lease, recover possession of the lease property and recover such additional amounts and liquidated damages as may be contractually provided under the lease agreement, as provided under R.S. 9:3320 through 3328.

Id. (1)(a)-(b). The phrase "any *one* of the following," quoted above, conveys that a lessor must choose one and only one of remedies (a) and (b). Id. (emphasis added). The subsection immediately following underscores this point: "The above remedies following the lessee's default are not cumulative in nature. The lessor may not seek to collect accelerated rental payments under the lease and also to cancel the lease and recover possession of the leased equipment." Id. at (2); see also, Gen. Elec. Cap. Corp. v. Southeastern Health Care., Inc., 950 F.2d 944, 953 (5th Cir. 1991) ("Section 3318 declares the optional remedies to be non-cumulative or disjunctive. . . . [The lessor] cannot do both. That prohibition is clearly mandatory, not suppletive.") And "[a]s a matter of public policy," the "absolute right" of a lessee to continue in peaceable possession of leased property unless and until the lease is cancelled "may not be waived or contractually abrogated under the lease agreement." Am. Leasing Co. of Monroe, Inc. v. Miller & Sons, Gen. Contractor, 16910-CA (2 Cir. 5/8/85); 469 So.2d 325, 328.

After Earthcare defaulted on the lease, Express Blower repossessed the equipment leased to Earthcare and sold it to another customer, Express Landscape. Accordingly, this Court concludes that Plaintiffs, who acted on IFC's behalf in repossessing the equipment, have elected statutory option (b). See LA. REV. STAT. ANN. § 9:3318. Plaintiffs'

repossession of the leased equipment had the effect of cancelling the lease by operation of law in April of 2005. See id. As a result, Plaintiffs are statutorily prohibited from collecting accelerated rental payments that would otherwise be due under the lease had the equipment not been repossessed. Id. Plaintiffs are entitled by statute only to any "additional [additional, that is, to the value of the recovered property] amounts and liquidated damages as may be contractually provided under the lease agreement." Id.

### 3. Default Remedies under the Lease

On June 2, 2005, IFC Credit Corporation ("IFC") assigned the lease to Express Blower. That assignment, dated June 2, 2005 and executed by IFC, provides that IFC transfers to Express Blower title to the lease, along with "all rental payments due and to become due under said lease" as well as "all of [IFC]'s powers, . . . rights, and remedies contained in [the] lease," including the right "to take all such actions or proceedings under the lease . . . that [IFC] might take except for such assignment." Record Document 18-3. At the time of the assignment, the lease had been canceled (through repossession of the equipment in April 2005) and Express Blower had purchased the equipment from IFC for $271,547.41.

Because IFC subrogated its rights under the lease to Express Blower by assignment, this Court does not need to consider whether the Vendor Program Agreement ("VPA") and Remarketing Agreements constitute a contract of suretyship. Even if this Court determined that a suretyship existed, Express Blower's rights against Earthcare would be no greater than the rights that already subsist per the assignment. Article 3048 of Louisiana's Civil Code states that "[t]he surety who pays the principal obligation is subrogated by operation of law to the rights of the creditor." Id. Under Louisiana law,

conventional or legal subrogation can give the subrogee no greater rights than the subrogor could have exercised. Institute of London Underwriters v. First Horizon Ins. Co., 972 F.2d 125, 127 (5th Cir. 1992). Plaintiffs point to various provisions of the VPA and Remarketing Agreements and urge this Court to look beyond the lease in calculating Earthcare's obligation to Express Blower. However, they cite no authority that would permit this Court to do so. Accordingly, this Court holds that Express Blower must stand in the shoes of IFC—Plaintiffs cannot recover from Earthcare in this case more than IFC could have by suing on the lease.

We turn now to the lease, the sole source of Earthcare's obligations to Express Blower, who is standing in the shoes of IFC. At the time of default, Earthcare owed IFC $108,162.92 worth of rental payments under the lease. Defendants urge the Court to offset this obligation by applying the $271,547.41 in proceeds that IFC received from Express Blower when Express Blower repurchased the equipment from IFC. In support of this argument, Defendants quote the following provision from the "Remedies" section of the lease:

> **without terminating the Lease, [Lessor may elect to] sell any or all of the equipment at public or private sale . . . or otherwise dispose of, hold, use, operate, lease to others or keep idle such Equipment all free and clear of the rights of Lessee and without any duty to account to Lessee for such action**, Lessor shall apply the net proceeds of such sale or release of the Equipment to Lessee's obligations hereunder corresponding to the date of default, after deducting from such proceeds all costs and expenses of repossession and disposition, and reasonable attorneys' fees.

Lease, § 17(e) (emphasis added). The bolded part of the paragraph, which provides that the Lessor may repossess the equipment without terminating the Lease, is contrary to La.

Rev. Stat. § 9:3318, quoted above. Accordingly, the provision is void as a matter of public policy. See Am. Leasing Co. of Monroe, Inc. v. Miller & Sons, Gen. Contractor, 469 So.2d 325, 328 (La.App. 2 Cir. 1985) (stating that nothing in the Louisiana Civil Code pertaining to leases of movables suggests that a lessor may cancel the lease, dispossess the lease, *and* recover all future rentals); see also Karam, supra at 1189 n34 ("Subsections (C) -(E) [of Louisiana Revised Statute 9:3303] prevent the parties from contracting around the statute's provisions on remedies and charge reductions, and from fixing revenue or agreeing that the lessee will be subject to the jurisdiction of another state."). Consequently, Plaintiffs are not entitled to any additional amounts or damages under the terms of the lease.

## CONCLUSION

For the reasons stated above, the Plaintiffs' Motion for Summary Judgment [Record Document 37] is **DENIED**, the Defendants's Cross Motion for Summary Judgment [Record Document 38] is **GRANTED**, and the Plaintiffs' claims are **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 4th day of December 2009.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE